## WILLIAM BRADFORD vs. ELLIS DREW.

**A.** shipped on board B.'s vessel for a fishing voyage, and signed a shipping paper in which it was agreed that A. should have a certain proportion of the fish that he should take on the voyage, or the proceeds thereof, and that B. should render to A. an account of the delivery or sales of all such fish: Before the vessel sailed on the voyage, A. drew an order on B. requesting him to pay to C., or order, a certain sum, at the end of the voyage, if he (A.) should make enough to pay said sum; which order B accepted. In a suit against B. on this acceptance, it was *held* that by ' the end of the voyage ' was not meant the arrival of the vessel, but the sale of the fish. *Held also* that although it was proved that B. might have sold the fish, soon after the arrival of the vessel, for a sum sufficient to pay the order, and that, by delaying the sale, he did not obtain a sum sufficient for that purpose ; yet if he acted in good faith, and sold the fish within a reasonable time, he was not liable to the holder of the order; and that, for the purpose of proving that he acted in good faith, and made the sale in a reasonable time, evidence was admissible of the custom of those employed in like fishing voyages to delay the sale of fish as long as B. had delayed in this instance.

ASSUMPSIT on the following order accepted by the defendant on the day of its date : " Plymouth, May 18, 1839. Mr. Ellis Drew : Sir : Please to pay William Bradford, or his order, $ 24·90, at the end of my voyage in the schooner Columbus on a fish voyage, if I make enough to pay, after taking out $ 10 I now owe you. Benjamin Battles." The money counts were added.

At the trial in the court of common pleas, it was in evidence that in May 1839, said Battles went on a fishing voyage in the schooner Columbus, of which the defendant was owner      That by the shipping paper which was signed by the defendant, as owner, and by the crew, of which said Battles was one, it was agreed that the fish, or the proceeds of the fish, that might be caught on board said schooner, by the master and fishermen — after deducting the expense for general supplies, which were to be furnished by said owner — should be divided as follows ; viz. to the owner, for his share, one quarter part thereof ; to the shoreman, for curing the fish, one eighth part ; to the skipper, for privilege, &c., one sixty fourth part ; " and the residue to and among the fishermen, including the master, in proportion to the number of fish they may respectively have caught." There was the following clause in said shipping paper : " The said

owner doth stipulate to and with said master and fishermen, that he will render a just and true account of the delivery or sales of all the fish that may be delivered to him or his agent, by said master of said schooner, or by the fishermen employed on board said schooner, and will account with said master, and with each fisherman, employed as aforesaid, for their respective shares of said fish, delivered as aforesaid, and for their interest in said fishing voyage," &c.

It was also in evidence that said schooner returned early in September 1839, and that the fish, which she brought in, were put into the hands of Samuel Doten, by the defendant, to be dried, and remained in his custody until they were sold, as hereinafter stated : That about fifty quintals of said fish were fully tried on the last of October following ; that " one or two more days' drying would have completed the drying of the remainder, and that the drying of the remainder might then have been completed by one or two more days' drying early in March following : " That the defendant called upon said Doten, on the last of said October, to ascertain the state of the fish, and told Doten that he (the defendant) should not sell them that autumn, but wished them to be in good order ; and that said Doten then told him, that if he meant to keep the fish till spring, " they ought not to be dried any more then ; to which the defendant agreed."

The plaintiff gave evidence that the fish might have been sold in the autumn of 1839, and also about the middle of March 1840, for such a price as would have produced a sum that would have left, on the adjustment of the voyage, a sum in the defendant's hands, belonging to the share of said Battles, sufficient to pay the amount of said order, over and above the ten dollars mentioned therein.

The defendant offered to prove that in his making up of the voyage, and crediting it with the actual sales of the fish, &c., belonging thereto, which were sold after the middle of March 1840, there was no balance due to said Battles, after deducting the said ten dollars ; and also to prove that by the custom of the fishing business, the fares of fish were never weighed off, nor the voyage made up, until the actual sale ; and likewise that it

was the custom for owners of fishing vessels to keep the fish on hand till the spring following the season when they were caught. But the court ruled that this evidence was not admissible.

There was no evidence that either Battles or the plaintiff ever requested the defendant to make an earlier sale of the fish, or to deliver Battles's proportion of the fish *in specie.*

The order was not presented to the defendant for payment, until after he had sold the fish and made up the voyage, as aforesaid.

The defendant insisted that he, acting in good faith, and according to the custom of such voyages, was not liable beyond the amount of the proceeds of the sales. But the jury were instructed " that by ' the end of the voyage,' mentioned in the order, was meant the time when the fish were or might be made fit for market ; and that if the jury were satisfied by the evidence, that the fish were or might have been fit for market in October 1839, or by the middle of March 1840, and that, if sold at either of those times, if they then were or might have been fit for market, would have produced such sum that Battles's share would have amounted to $24·90, over and above the ten dollars, they should find a verdict for the plaintiff."

A verdict was returned for the plaintiff, and the defendant alleged exceptions to the ruling and instructions of the court.

*J. H. Loud,* for the defendant.

*Gilbert,* for the plaintiff.

SHAW, C. J.   The defendant's acceptance was of a conditional order, and only bound him to pay the sum named out of the proceeds of the drawer's share in the fishing voyage described, first deducting a sum already advanced. It was payable at the end of the voyage, but only in case the drawer should " make enough " to meet it.   The term " end of the voyage " could not be construed literally, viz., the arrival of the vessel, because the fish would then be green, and not in a marketable condition.   But further ; the order was, to be paid in money, if " enough " &c. ; both which clauses imply that the fish were first to be sold, and converted into money, both to determine the

amount coming to the drawer for his share, and to put the acceptor in funds to pay it.

Supposing the acceptance not payable till the sale of the fish, still it might be contended that, as the whole authority to sell was in the owner, the present defendant, if he unreasonably neglected to make sale, might be held, at the election of those interested, to have made them his own by his laches, so as to be accountable for the value, in cash. *Porter* v. *Blood*, 5 Pick. 54.

Upon the point of reasonable diligence, the court are of opin ion that the usage of owners, in regard to the time and mode of sale, ought to have been received. Every person making contracts in reference to any course of trade, or branch of business, is presumed to be acquainted with the usages of that business ; and in the absence of express and controlling stipulations, he is presumed tacitly to consent that the business shall be conducted conformably to the usage. Further ; it was a question of sea· sonableness, as to the time of the sale of the fish by the owner. Now, the usage of other owners, as to the sale of their own fish, has a strong bearing upon the question of seasonableness and propriety, as to the time of selling. *Noble* v. *Kennoway*, 2 Doug. 510.

For these reasons, the court are of opinion that the evidence of usage and custom in regard to the fishing business, which was offered at the trial, and rejected, ought to have been received, and that the jury ought to have been instructed, that if the defendant acted in good faith, and sold the fish within reasonable time — of which the usage and custom of the trade would be good evidence — and if upon such sale, and making up of the accounts of the voyage, there was nothing due to the drawer of the order, the defendant was entitled to a verdict.

*Verdict set aside, and a new trial granted*